IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

NAYEF AMJAD QASHOU,                )
                                   )
        Petitioner,                )
                                   )
v.                                 )        CASE NO. 3:21-CV-660-ECM-KFP
                                   )                    [WO]
UNITED STATED OF AMERICA,          )
                                   )
        Respondent.                )

## <u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Pro se Plaintiff Nayef Amjad Qashou is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Doc. 1. After considering Qashou's § 2255 motion, his amendments to said motion, the supporting and opposing submissions, and the record in this case as well as his underlying criminal case,[1] the Court concludes that an evidentiary hearing is not required and that the motion should be denied.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On September 11, 2019, a federal grand jury in the Middle District of Alabama returned an indictment in Case No. 3:19-CR-364-ECM-KFP-1 charging Qashou with one count of False Statement to a Federal Agency in violation of 18 U.S.C. § 1001(a)(2) and

---

[1] This court takes judicial notice of its own records contained in the underlying criminal case at issue, Case No. 3:19-CR-364-ECM-KFP-1. *See* Fed. R. Evid. 201(b)(2); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts." (citation omitted)). All citations to Case No. 3:19-CR-364-ECM-KFP-1 are written as "Crim. Doc."

one count of Destruction, Alteration, or Falsification of Records in Federal Investigation in violation of 18 U.S.C. § 1519. Crim. Doc. 1.

Through the sentencing of his criminal case, Qashou was represented by the Federal Defenders office, specifically the attorneys Stephen P. Ganter and Sandi Yoshiko Irwin. *See* Crim. Docs. 10, 11.

On September 18, 2019, United States Magistrate Judge Capel held an initial appearance where he scheduled a detention hearing for October 1, 2019 (Crim. Doc. 120 at 4), and directed defense counsel to arrange to have Qashou evaluated because there was a pending Motion for Mental Competency Examination by the Government (*Id.* at 5). At the detention hearing on October 1, Judge Capel decided to reconvene on October 7 to allow the Government to have their expert do a psychiatric evaluation. Crim. Doc. 116 at 2.

On October 7, 2019, Judge Capel held a telephone status conference to discuss entrance of a plea and the Government's motion to remove Qashou to the custody of the Warden of the Federal Medical Center, Butner, North Carolina (Butner) for examination. Crim. Doc. 118; Crim. Doc. 22. The Government stated in the conference that they were not arguing that Qashou was not competent at that point in time. Crim. Doc. 118 at 3.

At the detention hearing that same day, Judge Capel said he thought the psychiatric reports pointed towards Qashou being competent. Crim. Doc. 117 at 2. Nonetheless, he held in abeyance the motion to detain and refer Qashou to Butner for evaluation to ensure that he was "being treated fairly and within his rights[.]" *Id.* Judge Capel noted that Qashou's affect seemed a bit different that day. *Id.* In his Order denying as moot the

2

Government's motions for mental competency examinations and ordering that Qashou be transferred to Butner for evaluation, Judge Capel explained that "based on developments in court on October 7, 2019, the Court has determined that reasonable cause exists to believe that [Qashou] may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense." Crim. Doc. 27 at 1. Judge Capel further explained that his determination was based partly on "the Court's observations of the change in [Qashou's] affect between his initial appearance and the hearing on October 7[.]" *Id.* at 1–2.[2] The psychiatric report from the Federal Bureau of Prisons was filed on January 28, 2020, and concluded that Qashou was "presently competent to proceed." Crim. Doc. 28 at 15.

On January 30, 2020, Qashou filed a Notice of Intent to Change Plea. Crim. Doc. 29. Pursuant to a Court Order (Crim. Doc. 30), Qashou then filed a Statement Regarding Competency and Criminal Responsibility stating that three different "evaluating physicians concluded that [] Qashou has the ability to understand the nature and consequences of these court proceedings and to cooperate with and assist counsel in his defense," (Crim. Doc. 31 at 1). Qashou's counsel also concluded that he was competent to proceed. *Id.* The Government concurred. Crim. Doc. 32. Consequently, on February 5, 2020, United States

---

[2] The other reasons given by Judge Capel were the representations of Qashou's counsel, Qashou's express request to be referred to Butner for evaluation, and the agreement of the Government. Crim. Doc. 27 at 1–2.

District Court Chief Judge Marks found that a competency hearing was not required and that Qashou was competent to stand trial. Crim. Doc. 33.

At his arraignment and change of plea hearing on February 11, 2020, Qashou pleaded not guilty and then entered a plea under Rules 11(c)(1)(A) and (c)(1)(C) of the Federal Rules of Criminal Procedure pleading guilty to Count 1 with an agreement for a sentence of time served. Crim. Doc. 115; Crim. Doc. 36. At the plea hearing, Judge Capel explained to Qashou that he was under oath and his answers, if false, could be used against him in another prosecution for perjury or making a false statement; Qashou affirmed he understood. Crim. Doc. 115 at 4. Judge Capel asked Qashou if he understood that should the Court choose not to follow the terms of the plea agreement, Qashou could withdraw his plea of guilty and change it to not guilty, but if he did not withdraw his plea, the Court would not be bound under the plea agreement and could impose a more severe sentence. *Id.* at 7. Qashou responded, "Yes, I understand." *Id.* Qashou also affirmed that he understood what an appeal was and that he had discussed that with his attorney. *Id.* at 9. At the end of the proceedings, Judge Capel found that Qashou was fully competent and capable of entering an informed plea, that Qashou was aware of the nature of the charges and the consequences of the plea, and that the plea of guilty was a knowing and voluntary plea. *Id.* at 15.

Judge Marks held a sentencing hearing on June 30, 2020. Crim. Doc. 57. After hearing testimony from Qashou's mother and father and argument from both Government attorneys and Qashou's defense attorneys, and considering the presentence report and all the documents that were produced for consideration, Judge Marks rejected the binding plea

agreement. *Id.* at 43–44. Qashou was given an opportunity to withdraw his guilty plea, and

he did. *Id.* at 44–45. Judge Marks then informed him that the case would move forward

with preparing for trial. *Id.* at 45. A trial date was set for November 2, 2020. *Id.* at 46.

On July 24, 2020, Qashou filed a Notice of Intent to Change Plea (Crim. Doc. 54),

and a change of plea hearing was scheduled before Judge Capel for July 30, 2020 (Crim.

Doc. 55). Pursuant to the terms of the plea agreement under Rules 11(c)(1)(A) and

11(c)(1)(B) of the Federal Rules of Criminal Procedure, Qashou agreed to plead guilty to

Count 1 and waive his right to appeal and collateral attack of the conviction or sentence,

with an exception for grounds of ineffective assistance of counsel or prosecutorial

misconduct. Crim. Doc. 59 at 2, 3, 7. The Government agreed to dismiss Count 2 and

recommend a sentence at the bottom of the guidelines, as calculated by the Court at the

sentencing hearing. *Id.* at 2–3.

At the change of plea hearing, Judge Capel again asked Qashou if he understood

that he was under oath and that if he answered any questions falsely, his answers could be

used against him in another prosecution. Crim. Doc. 92 at 6. Qashou answered

affirmatively. *Id.* Judge Capel also asked Qashou if there was anything that would prevent

him from fully understanding what was happening in court that day, to which Qashou

responded, "No." *Id.* at 7. When Judge Capel asked Qashou if he was "fully satisfied with

the counsel, representation, and advice given to [him] in this case by [his] attorney[,]"

Qashou answered, "Yes, Your Honor." *Id.* Qashou further affirmed that he had had an

opportunity to read and discuss the plea agreement with his lawyer before signing it, that

the plea agreement represented in its entirety any understanding he had with the

Government, that he understood the terms of the plea agreement, that no one had made any promises or assurances not in the plea agreement to persuade him to accept the agreement, and that he had not been threatened or forced to accept the agreement. *Id.* at 7–8. Qashou affirmed that he was pleading guilty of his own free will and because he was guilty, and that he understood the charge and the possible penalties he was facing. *Id.* at 9–10. When questioned if he understood that his plea agreement contained a waiver of his right to appeal or collaterally attack his sentence except in the limited circumstances of ineffective assistance of counsel, prosecutorial misconduct, or if the government appealed his sentence, Qashou responded, "Yes, Your Honor." *Id.* at 11. Qashou also affirmed he understood that he had the right to plead not guilty and a right to a trial by jury, but that if the plea of guilty was accepted, he would be giving up those rights. *Id.* at 11–12.

Following this line of questioning, Judge Capel had Qashou's attorney Irwin review the facts with Qashou to determine that there was a factual basis for the plea of guilty to Count 1, a false statement to a federal agent. *Id.* at 13–15. Judge Capel then questioned whether Qashou's omissions of fact would fit within the elements of the crime, to which the Government responded that it did because Qashou specifically told the agent that he only sent the videos he told them about and chose not to tell the agent about the other videos on the flash drive. *Id.* at 15. Satisfied by the Government's response and Irwin's assent to the Government's response, Judge Capel asked Qashou how he pleaded to the charge, to which he answered, "Guilty, Your Honor." *Id.* at 15–16. Judge Capel accepted the plea, finding that Qashou was "fully competent and capable of entering an informed plea, that [he] [was] aware of the nature of the charge and the consequences of the plea,

and that the plea [was] a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." *Id.* at 16.

On September 17, 2020, the district court accepted the plea agreement and conducted a sentencing hearing. Crim. Doc. 83 at 4. Judge Marks found that the guideline range was from 57 to 71 months. *Id.* at 6. After lengthy argument over a downward variance, Judge Marks denied the motion for variance and sentenced Qashou to 57 months—the lowest end of the guideline range. *Id.* at 31, 35. Ganter objected to the sentence as substantively unreasonable. *Id.* at 44. When questioned, Ganter answered affirmatively that he had discussed Qashou's appeal rights with him, to the extent that he possessed them, and would continue to advise him of his appeal rights. *Id.* at 45. The district court entered judgment on September 18, 2020. Crim. Doc. 73. Qashou did not appeal his conviction or sentence.

About a year later, on September 27, 2021,[3] Qashou filed a "Motion to Vacate a Second Sentence Garnered Absent Tenets of Due Process." Doc. 1. The Court advised Qashou of its intent to recharacterize his motion as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Doc. 2. The Court cautioned Qashou that this recharacterization would render his motion and any subsequent § 2255 motion subject to the procedural limitations for § 2255 motions; specifically, the one-year period of limitation and the successive-motion bar applicable to post-conviction motions. *Id.* The

---

[3] "Pursuant to the prison mailbox rule, an incarcerated person's filings are deemed filed on the date they are delivered to the prison mailroom—as opposed to the date they are docketed." *Collins v. United States*, 781 F. App'x 845, 847 (11th Cir. 2019) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)).

Court then ordered Qashou to inform the Court of his desire to either: (1) continue to proceed under § 2255 on the claims in his operative § 2255 motion; (2) amend his operative § 2255 motion to assert any additional claims; or (3) withdraw his motion. *Id.* at 2. On October 28, 2021, Qashou mailed a memorandum to the Court. Doc. 4. The Court construed this memorandum to be an amendment to his operative § 2255 motion "presenting additional claims challenging his 2020 conviction for making false statements to a federal agency and his resulting 57-month sentence" and ordered the Government to respond. Doc. 8 at 1. On January 19, 2022, the Government responded. Doc. 11. The Court then directed Qashou to reply to the Government's response (Docs. 12, 14), and the Court received Qashou's replies on February 4 and 10 of 2022 (Docs. 16, 17).

On June 2, 2022, Qashou filed a "Notice & Supplemental Reply in Support of § 2255 Motion." Doc. 19. The Court construed this notice "to be a Motion to Amend the § 2255 Motion to add a claim that [Qashou's] trial counsel rendered ineffective assistance of counsel by failing to file a direct appeal[.]" Doc. 20 at 1. The Court ordered the Government to file a response and to address whether Qashou's amendment was timely under the statute of limitations in § 2255(f), and that Irwin must file an affidavit with the Court that addressed the claim of ineffective assistance of counsel. Doc. 20. Irwin filed her affidavit on July 25, 2022 (Doc. 21), and the Government responded on July 29, 2022 (Doc. 22), but the response did not address whether the amendment was timely. On September 29, 2022, the Court advised Qashou that it appeared his second amendment was not timely and thus time-bared from review on the merits, and ordered that Qashou may reply to the

Government's response. Doc. 23. The Court received Qashou's reply on November 8, 2022, which did not address the Court's warning of untimeliness. Doc. 26.

The Court was then inundated with a barrage of filings from Qashou, including a Motion to File an Evidentiary Submission containing a purported email Qashou sent to Irwin on September 22, 2020. Doc. 40. The Court construed it as a motion to supplement his § 2255 motion and granted it, "to the extent it supplements the § 2255 motion with matters supporting [Qashou's] claims and arguments." Doc. 48.

The Federal Bureau of Prisons inmate database indicates that, following this barrage of filings, Qashou was released from federal prison on July 14, 2023. *See* https://www.bop.gov/inmateloc/# (last visited on February 3, 2025).

## II.    DISCUSSION

Qashou's arguments in his § 2255 motion (Doc. 1) and his first amended motion (Doc. 4) are unclear. But in sum, the Court construes the arguments in his § 2255 motion and his first amended motion to be: (1) his guilty plea should be vacated because he was incompetent to enter a plea agreement; (2) his sentence of 57 months (which he calls his "second sentence") should be vacated because it is unsupported by a new indictment; and (3) his counsel was ineffective for not arguing that he was incompetent to enter a plea agreement. Qashou argued in his second amended motion (Doc. 19) that his counsel was ineffective for failing to file an appeal. As explained below, none of these arguments are sufficient for the Court to grant his § 2255 motion.

**A. Qashou's argument that his guilty plea should be vacated fails because his qualm with the Court's finding of competency should have been raised on direct appeal, and Qashou did not meet his burden of production to show that he was incompetent to enter a guilty plea.**

Qashou asserts that the plea agreement accepted by the Court should be vacated because he was incompetent to enter one due to his "host of mental deficit(s)" (Doc. 4 at 1) and competency checks were skipped (Doc. 1 at 3). The Government argued in response that the plea agreement bars this collateral attack, and Qashou provided no evidence that he was incompetent when he entered his guilty plea. Doc. 11. In his reply brief, Qashou reiterated that there was no mutual understanding between the parties because he was incompetent and therefore there was no plea agreement. Doc. 17.

To start, the plea agreement does not bar Qashou's argument about his competency to enter a plea agreement. For an appeal waiver provision to be effective, it must be made knowingly and voluntarily. *United States v. Bushert,* 997 F.2d 1343, 1350 (11th Cir. 1993). If a defendant was incompetent when he made the plea agreement, then the agreement— including the waiver provision—cannot have been made knowingly and voluntarily; thus, a defendant may appeal the plea agreement by an argument of incompetency even when there is a waiver provision. *United States v. Hoobler*, 252 F. App'x 983, 989 (11th Cir. 2007)[4] ("Because a defendant can always appeal his decision to plead guilty on the ground that he did so involuntarily, he also can appeal whether he was competent to enter into a plea agreement whereby he relinquished his right to appeal his conviction."); *United States*

---

[4] Here, and elsewhere in this Opinion, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

*v. Greene*, 767 F. App'x 793, 797 (11th Cir. 2019) ("This claim is not barred by the appeal waiver because [defendant's] 'appeal waiver itself would be invalid if he lacked the mental capacity to understand and appreciate the nature and consequences of the plea agreement.'" (quoting *United States v. Wingo*, 789 F.3d 1226, 1234 n.8 (11th Cir. 2015))). Therefore, the Court will address the merits of Qashou's argument on his competency to enter a plea agreement.

To the extent that Qashou is arguing the Court's conclusion that he was competent to enter into a plea agreement was incorrect and a competency hearing should have been held, that is a procedural competency claim which must be raised on direct appeal. *See James v. Singletary*, 957 F.2d 1562, 1570–71 (11th Cir. 1992). If a procedural competency claim is not raised on direct appeal, it is deemed waived. *Id.* at 1572. Thus, because Qashou did not file a direct appeal, he has waived his procedural competency claim that the Court's conclusion of his competency was incorrect.

To the extent Qashou argues that he was incompetent to enter a guilty plea, that claim also fails because Qashou did not meet his burden of production. A claim that a person was convicted while incompetent is a substantive claim of incompetency. *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005). "[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Id.* (alteration in original) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). To receive a hearing on a substantive competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt [about] his

competence to stand trial." *Id.* at 1298–99 (alteration in original) (quoting *Medina*, 59 F.3d at 1106). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Id.* at 1299 (quoting *Medina*, 59 F.3d at 1106). "The determination of competence asks 'whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Perkins v. United States*, 73 F.4th 866, 876 (11th Cir. 2023) (alteration in original) (quoting *Medina*, 59 F.3d at 1106).

Qashou provided no evidence that he was incompetent to enter a guilty plea, instead arguing that he has a "host of mental deficit(s)"[5] which rendered him incompetent to enter a guilty plea. But the Eleventh Circuit has explained that "neither low intelligence nor mental deficiency can be equated with mental incompetence." *Id.* (first citing *Battle*, 419 F.3d at 1299–1300; and then citing *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1259 (11th Cir. 2002)). "'Not every manifestation of mental illness demonstrates' that the defendant is incompetent; 'rather, the evidence must indicate a present inability to assist counsel or understand the charges' at the time of the relevant proceeding, such as trial or sentencing." *Id.* (quoting *Battle*, 419 F.3d at 1299–1300); *see also Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009) ("Absent evidence of such an inability [to assist counsel or understand the charges], evidence of low intelligence, mental

---

[5] Qashou listed: "struggles with verbalization, inability to handle anxiety, diagnosed with Rule-Out Autism Spectrum Disorder (ASD), Asperger's Syndrome, Schizotypal Personality Disorder, pervasive pattern of interpersonal and social deficits, odd thinking, odd beliefs, odd behaviors, intellectual or language impairment." Doc. 4 at 1.

deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence to stand trial."). Qashou's claims of mental deficiency, standing alone, do not raise a real, substantial, and legitimate doubt about his competence to enter a guilty plea. *See Allen v. United States*, 563 F. Supp. 2d 1335, 1342 (M.D. Fla. 2008).

Indeed, the record provides evidence to the opposite. The Government attorneys, defense attorneys, and the Court took pains to ensure that Qashou was competent to stand trial. Qashou was evaluated by psychiatrists provided by his defense counsel (Crim. Docs. 20, 21), and although the reports indicated he was competent to stand trial, Judge Capel referred Qashou for further evaluation partly based on his demeanor in court that day (Crim. Docs. 27, 117). The psychiatric report from that referral to the Federal Bureau of Prisons stated that Qashou was competent to stand trial. Crim. Doc. 28. Qashou then filed a Statement Regarding Competency and Criminal Responsibility concluding that he was competent to stand trial (Crim. Doc. 31), and the Government concurred (Crim. Doc. 32). After such extensive evaluation and based on the parties' representations, the Court determined a competency hearing was not required and found that Qashou was competent to stand trial. Crim. Doc. 33. At Qashou's change of plea hearing on his second plea agreement, where Qashou was under oath, Judge Capel questioned Qashou whether there was anything that would prevent him from fully understanding the proceedings, and Qashou answered in the negative. Crim. Doc. 92 at 7. Qashou further answered in the affirmative that he understood the terms of the plea agreement (*Id.* at 7–8), and that he understood the charges against him (*Id.* at 9–10). At the end of the hearing, Judge Capel

found that Qashou was "fully competent and capable of entering an informed plea[.]" *Id.* at 16. Importantly, Judge Capel was the magistrate judge who, partly based on Qashou's demeanor in court, previously referred him for further psychiatric evaluation. Judge Capel was thorough in finding Qashou competent at the end of the proceeding. Accordingly, the record shows that Qashou was competent when he agreed to plead guilty.

Based on the lack of evidence provided by Qashou demonstrating he was incompetent to enter a guilty plea, and the record of effort taken by the attorneys and the Court to ensure that Qashou was competent to stand trial, the undersigned finds that Qashou's argument of incompetence lacks merit.

### B. Qashou's argument that the Court should vacate his "second sentence" fails because it is waived by his plea agreement and unsupported by law.

Qashou argued that the Court should vacate his "SECOND SENTENCE" (his conviction to 57 months in prison) because it is not supported by a "new (second) INDICTMENT," an "arraignment for new (second) charge(s), nor Constitutional Plea or Conviction." Doc. 1 at 1–2. He also argued that this "second sentence" constituted a "SECOND BITE,"[6] thereby violating the double jeopardy clause. *Id.* at 2. It appears that Qashou is arguing that because he signed two plea agreements, one of which was not accepted, that he was "prosecuted and SENTENCED . . . not once, but <u>twice</u>." *Id.* at 3. The Government argued in response that Qashou's plea agreement waived his right to file a collateral attack on his conviction, and even if the Court were to consider his substantive

---

[6] Qashou is presumably referencing the proverbial "second bite of the apple."

arguments, they conflict with the law. Doc. 11. Qashou's replies did not address these arguments.[7] Docs. 16, 17.

Qashou's second plea agreement, which the district court accepted and he was sentenced under, contained a collateral appeal waiver provision which bars his argument of an alleged "second bite of the apple." The written plea agreement in his underlying criminal case, Case No. 3:19-CR-364-ECM-KFP-1, contained the following language:

## VI. THE DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

16. Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the conviction or sentence. The defendant further expressly waives the right to attack the conviction or sentence in any post-conviction proceeding, including proceedings pursuant to 28 U.S.C. § 2255. Exempt from this waiver is the right to appeal or collaterally attack the conviction or sentence on the grounds of ineffective assistance of counsel or prosecutorial misconduct.

Crim. Doc. 59 at 7. Under these provisions, Qashou waived his rights to appeal and collaterally attack his conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct.

An appeal waiver or collateral-attack waiver is valid if entered knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *Bushert*, 997 F.2d at 1350–55. In this circuit, such waivers are enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting

---

[7] Both replies argued that the Court lacked jurisdiction because Qashou lacked standing. Docs. 16, 17. The second reply further argued that there was no showing of mens rea, that Qashou did not receive the Government's response, that a plea agreement could not be made because Qashou was incompetent, that the undersigned had "made herself part of the PLEA AGREEMENT," that Judge Marks and undersigned were in a conspiracy, and that the Court lacks jurisdiction because there is no case or controversy. Doc. 17.

cases). To enforce such a waiver, the government must show either (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert*, 997 F.2d at 1351.

The transcript of Qashou's second change of plea hearing in his underlying criminal case shows that Judge Capel questioned him about the waiver provision in the plea agreement and confirmed, through Qashou's affirmative answer, that Qashou understood he was waiving his right to later challenge his conviction and sentence, whether by appeal or collateral attack. Doc. 92 at 11. And, as determined above, Qashou was competent when he entered his guilty plea. Thus, the record establishes that Qashou's waiver of his collateral attack right was knowing and voluntary. *See Bushert*, 997 F.2d at 1351. Because the waiver is enforceable in this proceeding and Qashou's argument challenging his "second sentence" does not fall under the specified exceptions to the waiver, that argument is barred from review.

Alternatively, Qashou's argument that his sentence should be vacated because it is a "second bite at the apple" fails substantively because it is unsupported by law. A district court's rejection of an initial guilty plea does not invalidate the indictment. When an initial plea is entered pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) or 11(c)(1)(C), it is within the district court's discretion to reject the plea agreement. Fed. R. Crim. P. 11(c)(5); *United States v. Dickerson*, 636 F. App'x 506, 510 (11th Cir. 2016); *United States v. Murphy*, 591 F. App'x 747, 748 (11th Cir. 2014); *United States v. Garrott*, 812 F. App'x 905, 909 (11th Cir. 2020). Following the rejection of a plea agreement, the defendant may

16

withdraw his guilty plea and proceed to trial under the original indictment. *See Dickerson*, 636 F. App'x at 510 n.1 (citing Fed. R. Crim. P. 11(d)(2)(A)).

Here, the initial plea agreement was made pursuant to Rule 11(c)(1)(A) and Rule 11(c)(1)(C). Crim. Doc. 36 at 2. Judge Capel, in open court, warned Qashou—and Qashou affirmed he understood—that his plea agreement may not be accepted, and if that occurred, the case would proceed forward in some way: either he could plead not guilty (and proceed to trial) or keep his guilty plea and risk a more severe sentence. Crim. Doc. 115 at 7. Based on Judge Capel's questions and Qashou's answers, Qashou understood, or should have understood, that the rejection of his plea agreement would not require the Government to file another indictment. Rather, the rejection of his plea agreement would result in the case moving forward, under the indictment, either to trial or sentencing. But regardless of Qashou's understanding, the law remains clear that a rejected plea agreement does not invalidate the underlying indictment. Thus, substantively, Qashou's argument to vacate his "second" sentence is not meritorious.

### C. Qashou's two ineffective assistance of counsel claims fail: the first claim (Doc. 4) fails on the merits and the second claim (Doc. 19) fails because it is untimely, does not relate back, and is meritless.

In his first amended motion, Qashou appears to raise an ineffective assistance of counsel claim limited to his counsel's alleged failure in not asserting his incompetence to enter a plea agreement. Doc. 4. Qashou later filed a second amended motion raising an ineffective assistance of counsel claim for failure to file an appeal. Doc. 19. For the reasons explained below, both claims fail.

1.  <u>Qashou's ineffective assistance of counsel claim in his first amended motion fails because Qashou did not provide sufficient evidence to overcome the presumption of effective assistance of counsel.</u>

In his construed amendment to his § 2255 motion (Doc. 4), Qashou appears to raise a claim of ineffective assistance of counsel. He stated that "[h]ad he received EFFECTIVE ASSISTANCE OF COUNSEL, he would not have been in prison. Put, plainly, his court appointed counsel, protected the government's case and this is something [Qashou] could never understand." Doc. 4 at 2. The Government's response considered Qashou's claim of ineffective assistance of counsel to be tied to his claim of incompetence: that counsel was ineffective for failing to raise the issue of his incompetency to enter a plea agreement. Doc. 11 at 7. The Government then argued that the ineffective assistance of counsel claim fails because the underlying claim of incompetence had no merit. Doc. 11 at 7–8. Qashou's reply briefs offered no illumination on his ineffective assistance of counsel argument. Docs. 16, 17.

It is unclear what exact aspect of his attorney's representation Qashou believes was ineffective based on his assertion that if he had received effective assistance of counsel he would not be in prison. But the surrounding context of Qashou's § 2255 motion and first amended motion, along with the record, establishes that the Government's characterization is correct: Qashou's first ineffective assistance of counsel claim is for counsel's alleged failure to argue he was incompetent to enter a plea agreement.

In both his § 2255 motion and first amended motion, Qashou argued that his plea agreement is not valid because he was not competent. For example, in his § 2255 motion, Qashou claimed that the Court, along with the attorneys, "schemed, surreptitiously, to

REMOVE EVIDENCE of [QASHOU'S] <u>incompetency</u> from PLEA CONTRACT to make it appear as though this was a 'good faith' negotiation between the parties." Doc. 1 at 2–3. In his amended motion he claimed that no contract with him was formed because he has a host of mental deficits. Doc. 4 at 1. These assertions in his § 2255 motion and first amended motion show that Qashou believes his plea agreement is invalid because he was incompetent to enter one, so it stands to reason that an ineffective assistance of counsel claim in his first amended motion would also concern his competency to enter a guilty plea.

The record from Qashou's underlying criminal case also supports this characterization of his first ineffective assistance of counsel claim. As previously noted, his § 2255 motion and his first amended motion were filed in September and October 2021, respectively. Prior to these actions, on May 27, 2021, Qashou filed a "Motion to Declare Breach of Plea Agreement" in his underlying criminal case. Crim. Doc. 78. In this motion, Qashou claimed he was coming in "Good Faith, Peace and Honor, Protest (now, super protest) for Ineffective Assistance of Counsel (IAC), Prosecutorial Misconduct (PM), for dishonor and curing defects along the way[.]" *Id.* at 2. He explained that the Court should find the plea agreement was breached because the attorneys contracted with Qashou when he was incapable of contracting with them because he was mentally incompetent. *Id.* at 2–3. He then accused the defense attorneys of committing fraud for not informing him that they had a "Conflict of Interest" and "were never working for [his] interest" because they are "government agents." *Id.* at 4. The defense attorneys also allegedly violated his Fifth and Sixth Amendment rights because "[p]olicy, prohibits contracting (i.e. doing business with mentally incompetent person(s))[.]" *Id.* at 5.

On July 12, 2021, after the Court denied his motion by order (Crim. Doc. 79), Qashou filed a "Motion On/In Reconsideration For Court Order to Declare Government's "Plea Agreements" Filed, Feb. 11, 2020 and July 30, 2020 In Breach of Contract and 'Good Faith,'" (Crim. Doc. 80). In this motion for reconsideration, Qashou claimed that his attorneys were "prickly perpetrators" who knew that they "could not NEGOTIATE with [Qashou]." *Id.* at 2, 3. He then specifically alleged that Irwin failed to perform on behalf of Qashou because: (1) she did not disclose that "her true representation was for the government, the case, and judge," (2) she helped secure a conviction and sentence and then told Qashou he had to file a § 2255 petition "on his own to gain relief or release from a mess she procured with her assistance," and (3) that her sentencing memorandum "should cause her to lose sleep at night." *Id.* at 4–5. In his "SUMMARY," Qashou claimed that because the "Federal Defenders, failed to honor U.S. Constitution's Guaranteed protections via Sixth Amendment, [Qashou] did suffer extensive damage(s) due to the wiles of contract manipulation in/on No. 3:19cr364." *Id.* at 8. For those reasons, he asked the Court to declare the plea agreement in breach of contract. *Id.* On November 22, 2021, the Court, in an order denying the motion for reconsideration, construed Qashou's argument to be that "his trial counsel was ineffective for failing to raise a competency issue[.]" Crim. Doc. 84. The Court then informed Qashou that the appropriate mechanism to attack his conviction was in his pending § 2255 motion. *Id.*

On December 7, 2021, the Court received three filings from Qashou: a "Request For Re-Evaluation of Mental Condition(s)" (Crim. Doc. 85), a Notice of Appeal for the Court's November 22 Order (Crim. Doc. 86), and a (construed) motion for reconsideration of the

November 22 Order (Crim. Docs. 89, 90). In his request for re-evaluation, Qashou claimed that he was "robbed of PSYCHOSIS and guided by villains, even coached through court procedures to be forced into serving a prison SENTENCE," (Crim. Doc. 85-1), and in his motion for reconsideration, he argued that the plea agreement was unconstitutional because he is mentally challenged (Crim. Doc. 89 at 1).

The underlying criminal record in Case No. 3:19-CR-364-ECM-KFP-1 demonstrates that Qashou's main allegation against his lawyers is that they induced him to sign a plea agreement (contract) with the Government when he was clearly incompetent to do so. Also mentioned in both his § 2255 motion and his motion in the underlying criminal case is the assertion that his counsel were government agents who were protecting the Government's case. *See* Doc. 4; Crim. Doc. 78. This shared allegation in both his civil and criminal cases reinforces that the record of one can help illuminate Qashou's intentions in the other.

Consequently, the undersigned finds that the ineffective assistance of counsel claim in Qashou's § 2255 amended motion is for failing to argue that Qashou was incompetent to enter a plea agreement and will proceed to the merits of this claim.

The Sixth Amendment guarantees a right to counsel, which the Supreme Court explained includes entitlement to effective assistance of competent counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citations omitted). To determine whether counsel was effective, the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The *Strickland* two-part test provides

that, (1) "the defendant must show that counsel's performance was deficient"; and (2) "the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, "[c]ounsel is 'strongly presumed' to have rendered adequate assistance and to have exercised reasonable professional judgment." *Patel v. United States*, 252 F. App'x 970, 972 (11th Cir. 2007) (per curiam) (quoting *Strickland*, 466 U.S. at 690). The burden is on the petitioner to "prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (first citing *Strickland*, 466 U.S. at 687–88; and then citing *Williams v. Taylor*, 529 U.S. 362, 389–90 (2000)); *see also LeCroy v. United States*, 739 F.3d 1297, 1312 (11th Cir. 2014) ("It is petitioner's burden to 'establish that counsel preformed (sic) outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" (alteration in original) (quoting *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir. 2004))). *Strickland* requires that both prongs are met; if either prong is lacking, the Court need not address the other one. *Strickland*, 486 U.S. at 697.

Here, Qashou has provided no evidence or argument sufficient to overcome the presumption of effective assistance in prong one of the *Strickland* test. The only allegations before the Court from Qashou are that his counsel "schemed, surreptitiously, to REMOVE EVIDENCE of [QASHOU'S] incompetency from PLEA CONTRACT" (Doc. 1 at 3), and that his counsel "protected the government's case" (Doc. 4 at 2). But it is Qashou's burden to show that his counsel was ineffective, and he provided no evidence or further argument

to support either of these allegations. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler*, 218 F.3d at 1314 (first citing *Kimmelman v. Morrison,* 477 U.S. 365, 380–381 (1986); and then citing *Williams*, 529 U.S. at 389–90). Qashou's unsupported allegations do not surmount his heavy burden of showing that his counsel was ineffective.

In contrast, the record establishes that Qashou was satisfied with his counsel during the pre-sentence phase of his case. At his second change of plea hearing, Qashou answered affirmatively when Judge Capel asked him, while he was under oath, if he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by [his] attorney[.]" Crim. Doc. 92 at 7. "There is a strong presumption that statements made during the plea colloquy are true." *Patel*, 252 F. App'x at 975 (citing *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994)). "Consequently, a defendant bears a heavy burden to show that his statements under oath were false." *Id.* (citing *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988)). Qashou has provided no evidence to challenge the veracity of his sworn testimony at the change of plea hearing. Rather, "his self-serving statements appear to be a last-minute attempt to escape the preclusive effect of the appeal waiver." *Id.*

Thus, there is insufficient evidence to overcome the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. Accordingly, Qashou's claim of ineffective assistance of counsel for failure to argue that he was incompetent to enter the plea agreement fails on the merits.

2. <u>Qashou's claim for ineffective assistance of counsel for failure to file an appeal raised in his second amended motion fails because it is untimely and does not relate back to his § 2255 motion.</u>

In his "Notice & Supplemental Reply in Support of § 2255 Motion," filed on June 2, 2022, Qashou raised what the Court construed to be an ineffective assistance of counsel claim for failure to file a direct appeal on his behalf. Docs. 19, 20. The Government argued in response that Irwin did not perform in a professionally unreasonable manner. Doc. 22. Qashou's reply brief argued that his Sixth Amendment right was violated because he has autism and his counsel failed to have a legal guardian appointed, and his counsel failed to file a "rule 12 motion to dismiss the indictment because he is innocent." Doc. 26 at 16.[8] Neither the Government's response nor Qashou's reply addressed whether this amended motion was filed within the statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA).

Because neither party addressed whether the amended motion is timely, the threshold question is whether the Court can sua sponte address a timeliness issue. The Supreme Court has held that "district courts are permitted, but not obliged, to consider, *sua sponte,* the timeliness of a [] prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). But this permission extends only to a *forfeited* habeas defense. *See Wood v. Milyard*, 566 U.S. 463, 471 n.5 (2012) ("[A] federal court has the authority to resurrect only forfeited defenses."). It would be "an abuse of discretion to override a State's

---

[8] Qashou further discussed in his reply brief how he is not procedurally defaulted from raising an ineffective assistance of counsel claim in his § 2255 motion that he did not raise in a direct appeal and how the Court lacks subject matter jurisdiction because an essential element of the crime was not met. Doc. 26.

deliberate waiver of a limitations defense." *Day*, 547 U.S. at 202; *see also Wood*, 566 U.S. at 472–73. The Supreme Court noted the distinction between a forfeited defense and a waived defense: "[a] waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." *Wood*, 566 U.S. at 470 n.4 (first citing *Kontrick v. Ryan,* 540 U.S. 443, 458, n.13 (2004); and then citing *United States v. Olano,* 507 U.S. 725, 733 (1993)). The Eleventh Circuit also explained that waiver exists when "a party affirmatively and intentionally relinquishes an issue[.]" *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022).

Even when the government has forfeited—not waived—a statute of limitations defense, there are further limits to the Court's ability to sua sponte address a timeliness issue. First, "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Day*, 547 U.S. at 210 (citations omitted); *see also Burgess v. United States*, 874 F.3d 1292, 1298 (11th Cir. 2017); *Wood*, 566 U.S. at 472–73. Second, "the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." *Day*, 547 U.S. at 210 (quoting *Granberry v. Greer*, 481 U.S. 129, 136 (1987)); *see also Burgess*, 874 F.3d at 1298; *Wood*, 566 U.S. at 472–73. Third, a district court may not address a timeliness issue if the "[government] 'strategically' withheld the defense or chose to relinquish it." *Day*, 547 U.S. at 211 (2006); *see also Burgess*, 874 F.3d at 1298; *Wood*, 566 U.S. at 472–73.

Therefore, the pertinent question here is whether the Government's silence, and lack of any supplemental briefing addressing whether the amendment was timely, constitutes a forfeiture or waiver of its statute of limitations defense.

In *Day*, the government asserted that the 28 U.S.C. § 2244 petition was timely because it was filed within the one-year limit when accounting for tolled time. 547 U.S. at 201. The magistrate judge, upon review of the record, realized that the government had miscalculated the tolling time. *Id.* The magistrate judge then gave the petitioner an "opportunity to show cause why the petition should not be dismissed for failure to meet the statutory deadline, and finding petitioner's responses inadequate, the [m]agistrate [j]udge recommended dismissal of the petition." *Id.* at 202. The district court adopted the recommendation, and the Eleventh Circuit affirmed. *Id.* The Supreme Court determined that "the federal court confronted no intelligent waiver on the [government's] part, only an evident miscalculation of the elapsed time under a statute designed to impose a tight time constraint on federal habeas petitioners." *Id.* The Supreme Court held that, in the circumstances of the case, "the federal court had discretion to correct the [government's] error and, accordingly, to dismiss the petition as untimely under AEDPA's one-year limitation." *Id.*

In contrast, the Supreme Court determined in *Wood* that the government's conduct amounted to a waiver of their statute of limitations defense that could not sua sponte be revived. 566 U.S. at 474. The question the Supreme Court asked was, "[d]oes court discretion to take up timeliness hold when a State is aware of a limitations defense, and intelligently chooses not to rely on it in the court of first instance?" *Id.* at 466. The answer,

based on *Day*, was "no." *Id.* The Supreme Court explained that after the district court initially dismissed the petition as untimely, on reconsideration the district court "vacated the dismissal and instructed the [government] to file a preanswer response 'limited to addressing the affirmative defense[] of timeliness[.]'" *Id.* at 467. In its preanswer response, the government stated that it "[would] not challenge, but [was] not conceding, the timeliness of [petitioner's] [federal] habeas petition." *Id.* (last alteration in original) (quoting App. at 70a). "[I]n its full answer to [the] federal petition, the [government] repeated: 'Respondents are not challenging, but do not concede, the timeliness of the petition.'" *Id.* (quoting App. at 87a). Based on these assertions, the Supreme Court determined that the government had waived their statute of limitations defense. *Id.* at 474. The Supreme Court reasoned that the government "was well aware of the statute of limitations defense available to it and of the arguments that could be made in support of the defense." *Id.*[9] The government's "decision not to contest the timeliness of [petitioner's] petition did not stem from an 'inadvertent error,' as did the [government's] concession in *Day*." *Id.* "Rather, the [government], after expressing its clear and accurate understanding of the timeliness issue, . . . deliberately steered the [d]istrict [c]ourt away from the question and towards the merits of [the] petition." *Id.*

The Court finds that the Government's silence amounts to forfeiture because the facts of this case are distinct from cases that determined the government waived its statute

---

[9] As the Supreme Court put it, "[e]ssentially, the [d]istrict [c]ourt asked the State: Will you oppose the petition on statute of limitations grounds? The State answered: Such a challenge would be supportable, but we won't make the challenge here." *Wood*, 566 U.S. at 474.

of limitations defense. Here, neither the Court nor Qashou alerted the Government to the untimely nature of the motion and the Government's silence was the antithesis of the affirmative conduct that amounted to waiver in other cases.

First, this was not a situation where the Government, in the face of a clearly articulated or highlighted timeliness issue, remained silent. The Court ordered the Government to file a response that, inter alia, "address[ed] whether [Qashou's] amendment [was] timely under the statute of limitations[.]" Doc. 20 at 1. This was a general directive to the Government to inform the Court of the Government's stance on the amendment, including any potential statute of limitations defense, and it was nearly identical to the Order the Court entered when it directed the Government to respond to Qashou's first amended motion. *See* Doc. 8 at 2. The Order did not highlight that the amended motion was untimely. The Court did not spotlight the untimely nature of the amended motion until it instructed Qashou that he may reply to the Government's motion. Doc. 23 at 1 ("[I]t also appears his claim is not timely raised under the [statute of limitations], and, for this reason, is also time-barred from review on the merits."). In contrast, in cases that found waiver, the court or petitioner had clearly articulated or highlighted a timeliness issue and the government nonetheless remained silent. *See Urias v. United States*, 2009 WL 1079842, at *2 (E.D. Okla. Apr. 22, 2009) ("In this case, the [c]ourt clearly indicated its belief that [p]etitioner's motion was barred by § 2255's one-year statute of limitations[.]"); *Gaitan v. United States*, 2018 WL 5984854, at *1–2 (N.D. Ga. Oct. 16, 2018) (finding, after supplemental briefing, that government forfeited its statute of limitations defense when it was silent in response to petitioner's § 2255 motion that acknowledged her motion was

untimely). Because neither the Court nor Qashou highlighted that the motion was untimely directly to the Government, this was not a situation where the Government's silence conveyed a deliberate, intelligent waiver.

Second, this was not a situation where the Government took some affirmative step, such as stating that it considered the amended motion timely. In responding, the Government did not concede the timeliness issue or articulate a clear and accurate understanding of the issue. The Government did not suggest that the issue was in doubt, or that it was electing not to address it in favor of a merits argument. Instead, the Government was silent; it overlooked the issue altogether. These actions stand in contrast to cases that found waiver after the government engaged in some form of affirmative conduct. *See Wood*, 566 U.S. at 474 ("[T]he [government], after expressing its clear and accurate understanding of the timeliness issue . . . deliberately steered the [d]istrict [c]ourt away from the question[.]"); *Rogers v. United States*, 569 F. App'x 819, 821 (11th Cir. 2014) (The government "expressly stated that [petitioner] filed a timely motion[,]" and that "notwithstanding *Johnson*, [petitioner's] argument was meritless."); *Brascomb v. United States*, 2015 WL 7300512, at *3–4 (M.D. Ala. Nov. 18, 2015) (finding the government waived its statute of limitations defense based on, inter alia, its "stated non-opposition to a resentencing hearing"). Here, the Government engaged in the passive conduct of silence and took a shortcut to the briefing by simply incorporating its procedural history from an earlier brief addressing the original motion and diving only into the merits of the new ineffective assistance of counsel issue raised in the amendment. Doc. 22 at 1 n.2. Thus, under these circumstances where neither nor the Court nor Qashou highlighted the

untimely nature of the amended motion and the Government engaged in no affirmative conduct concerning a statute of limitations defense, it appears the Government's briefing omission was a forfeiture, an inadvertent error, more akin to the miscalculation in *Day*.

Two analogous cases bolster finding that the Government's conduct amounted to forfeiture. In a case about whether an appellate court could consider a good faith exception when the government failed to raise the exception in its brief, the Eleventh Circuit held that "the mere failure to raise an issue in an initial brief on direct appeal should be treated as a forfeiture of the issue." *Campbell*, 26 F.4th at 873. In another case about whether "a district court may, on its own initiative and without hearing from the [government], decide that the statute of limitations bars the petition[,]" the Eleventh Circuit said it may. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 650 (11th Cir. 2020) (per curiam). In *Paez*, "the [government] was notified of the court's action and had an opportunity to respond, including an opportunity to inform the [d]istrict [c]ourt if it intended to waive the timeliness defense. The [government] remained silent." *Id.* at 655. The Eleventh Circuit explained that "no one contests that the petition was untimely, and the [government] has never indicated a desire to waive the limitations bar[,]" and held that the "[t]he [d]istrict [c]ourt thus complied with *Day* and Rule 4 and its dismissal was not an abuse of discretion." *Id.*

The Court further finds that none of the expressed limits in *Day* prevent a revival of the Government's limitations defense. *See Day*, 547 U.S. at 210–11; *see also Burgess*, 874 F.3d at 1298; *Wood*, 566 U.S. at 472–73. Both parties were given fair notice and opportunity to present their positions. As stated, the Court directed the Government to address the timeliness of the amended motion, and the Court warned Qashou that his

motion appeared to be untimely. There has also not been any prejudice to Qashou because the timeliness issue was not a barrier in preventing the case from proceeding forward. There are other issues in Qashou's § 2255 motion and amended motions that needed to be addressed, and the Court has been ruling on Qashou's barrage of filings over the preceding years. Further, there is nothing to indicate that the Government strategically withheld the limitations defense. Finally, the interests of justice would be better served by finding Qashou's claim of ineffective assistance of counsel for failure to file an appeal is time barred rather than addressed on the merits. In *Day*, the Supreme Court agreed with the government that there should not be an inflexible rule "treating the [government's] failure initially to plead the one-year bar as an absolute waiver"; rather, "the statutes, Rules, and decisions in point [] permit the 'exercise [of] discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition.'" 547 U.S. at 208 (last alteration in original) (quoting Brief for Respondent 14). In contrast to Qashou's continued assertions throughout his criminal and civil records that his plea agreement is invalid, the record is barren of any mention of a grievance with his lack of appeal (outside the second amended motion).[10] Even his reply brief, which is 18 pages excluding the exhibits, does not mention

---

[10] As previously detailed, Qashou's underlying criminal case filings leading up to his original § 2255 motion focused on his *plea agreement*. They do not mention any grievance with a failure to file an appeal. The only mention of appeal is in his "Motion On/In Reconsideration for Court Order to Declare Government's 'Plea Agreements' Filed Feb. 11, 2020 and July 20, 2020 in Breach of Contract and 'Good Faith.'" Crim. Doc. 80. He filed that motion for reconsideration after the district court judge denied his "Motion to Declare Breach of Plea Agreement." Crim. Doc. 78. In his motion for reconsideration, he states that the delay in mail was "affecting the ability to make effective appeal," (Crim. Doc. 80 at 2), and that "[i]f document is filed on the RECORD, this is an immediate PREJUDICE, against [Qashou], because it puts [Qashou], at

any concern about his lack of appeal.[11] Notably, in a motion for a new trial filed on December 27, 2024 in his underlying criminal case, Qashou claims that he believes "in good faith" that "any respectful difference" the Federal Defenders may have with him, "with respect to some or all of the IAC claims submitted in this or previous filings," "can be easily set aside, without a conflict of interest, provided that federal defenders can represent and advocate for [him] for the purpose of a new trial." Crim. Doc. 121 at 5. This assertion underscores the lack of sincerity and seriousness of Qashou's ineffective assistance of counsel claims and why the appeal related claim should not be addressed on the merits.

---

disadvantage for purpose of appeal," (*Id.* at 6). These are the only two mentions of an appeal, and they concern appealing the denial of his motion to declare the Government in breach of the plea agreement, not an appeal of his conviction. Indeed, Qashou promptly appealed the denial of his motion for reconsideration. Crim. Doc. 86. Even after he filed his amended motion claiming ineffective assistance of counsel for failure to file an appeal, Qashou continues to focus on the alleged ineffective assistance of counsel surrounding his plea agreement. *See* Crim. Doc. 121 at 5 (alleging that his attorneys were "ineffective in advocating for or protecting [his] innocence *during the initial pretrial period*[.]" (emphasis added)). Further, in his civil case, none of Qashou's filings prior to his amended motion mention the word "appeal." *See* Docs. 1, 3, 4, 6, 16, 17.

[11] Only three pages mention an ineffective assistance of counsel claim. One page, in relation to a direct appeal, states that "trial counsel would have not interest (sic) in filing her own IAC claims against herself after she may have realized that her client may have signed a plea deal, when in fact, he may be very well innocent of at least one or both charges." Doc. 26 at 3. But Qashou does not express any grievance over his lack of appeal. His argument centers on whether he is procedurally barred from bringing his ineffective assistance of counsel claim on a § 2255 motion if he did not raise it on direct appeal. *Id.* at 1–3. Additionally, the following sentence confirms that Qashou's grievance with his counsel concerns his conviction, i.e., his plea agreement, not a failure to file an appeal. Doc. 26 at 3 ("This mean's (sic) that trial counsel may be ineffective for facilitating the conviction of another innocent man."). The other two pages allege ineffective assistance of counsel for not appointing Qashou a legal guardian, not filing Rule 12 motions, and he was prejudiced to sign the plea deal. *Id.* at 16–17.

Thus, for the foregoing reasons, the Court finds that under the circumstances of this case the Government's silence amounts to a forfeiture, and the Court may sua sponte address whether Qashou's second amended motion is timely.[12]

A § 2255 motion must be filed within the statute of limitations period imposed by AEDPA. Under 28 U.S.C. § 2255(f) the one-year period of limitation,

> shall run from the latest of—
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

As stated above, the district court sentenced Qashou on September 17, 2020, and entered judgment in his case on September 18, 2020. Because Qashou did not appeal the judgment, the conviction became final 14 days later, on October 2, 2020. *See* Fed. R. App. P. 4(b)(1)(A)(i). Therefore, the § 2255 limitation period expired one year later, on October 2, 2021. Qashou filed his second § 2255 amended motion on June 2, 2022, which is more

---

[12] **As noted *infra*, the parties have 14 days to file written objections to this Recommendation. This objection period will also serve as a notice and opportunity to supplement the record by responding to the Court's finding that the Government's silence is a forfeiture, not waiver, of its statute of limitations defense. *See Brascomb*, 2015 WL 7300512, at \*3–4 (finding that, inter alia, because the government did not object to the recommendation's conclusion that it had expressly waived its timeliness argument, it had waived its timeliness defense); *Paez*, 947 F.3d at 655 (holding that petitioner was given "ample notice and opportunity to explain why his petition was timely . . . when he was given the opportunity to respond to the magistrate judge's [recommendation] that his petition be summarily dismissed as untimely.").**

than a year after his conviction became final; thus, this second § 2255 amended motion is untimely. *See Ballesteros v. United States*, 730 F. App'x 801, 803 (11th Cir. 2018) ("[Petitioner] filed his motion to supplement more than one year after his conviction became final . . . so his new claim was untimely[.]").

Because Qashou's ineffective assistance of counsel for failure to file an appeal claim is untimely, the claim is barred from review unless it "relates back" under Federal Rule of Civil Procedure 15(c). *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). Rule 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Eleventh Circuit has explained that the "critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). In the context of a habeas corpus petition, the Supreme Court provided that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005); *see also Davenport*, 217 F.3d at 1344–45. The Supreme Court rejected the argument that the same "conduct, transaction, or occurrence" meant the same "trial, conviction, or sentence." *Mayle*, 545 U.S. at 664. Rather, the Supreme Court explained, relation back is in order when "the original and amended petitions state claims that are tied to a common core of operative facts." *Id.* "Thus, while Rule 15(c) contemplates that parties

34

may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002).

The appeal-related ineffective assistance of counsel claim in the amended motion[13] does not relate back because it asserts a new ground for relief supported by facts that differ in both time and type from the claims advanced in the original § 2255 motion. As explained above, the original § 2255 motion centered on the formation of the plea agreement: that if his counsel had been effective, his counsel would have argued Qashou was incompetent to enter a plea agreement, and he would not have gone to prison. Doc. 1 at 2–3; Doc. 4 at 2. Qashou's amended motion, on the other hand, deals with a decision made post-sentencing: counsel's failure to appeal the criminal judgment entered. Doc. 19.

While Qashou may point to certain aspects that these claims factually share— failures enacted by the same counsel, for the same case, and for the same reason (i.e., failing to accommodate Qashou's cognitive difficulties)—these alleged failures by his counsel occurred at different points in his case. The Eleventh Circuit has held that when two ineffective assistance of counsel claims concern different points in a case, the untimely claim does not relate back to the timely claim. *Davenport*, 217 F.3d at 1346; *Espinosa v. United States*, 330 F. App'x 889, 892 (11th Cir. 2009). In *Davenport*, the original § 2255 motion and the amended § 2255 motion both contained claims of ineffective assistance of

---

[13] For ease of comprehension, in this section when the Court refers to the "original § 2255 motion" or "original motion," it is referring to both the § 2255 motion (Doc. 1) and the first amended motion (Doc. 4). The motion to amend filed on June 2, 2022 (Doc. 19) will be referred to as the "amended motion" in this section.

counsel. 217 F.3d at 1343. But the amended motion asserted an ineffective assistance of counsel claim for "failure to advise [petitioner] of a possible plea agreement," while the original motion "contain[ed] no mention of any such pre-trial activity or inactivity." *Id.* at 1346. Thus, the Eleventh Circuit held that "[petitioner's] [] new claim[] [did] not arise out of the same set of facts as his original claims, but arose from separate conduct and occurrences in both time and type." *Id.* Similarly, here, the two ineffective assistance of counsel claims are not tied to a common core of operative facts because one ineffective assistance of counsel claim pertains to his plea agreement pre-sentencing while the other deals with his grievance of a failure to file an appeal post-sentencing. *See Espinosa*, 330 F. App'x at 892 ("[T]he newly raised pretrial ineffective assistance claims are not 'tied to a common core of operative facts' with the trial and sentencing ineffective assistance claims and do not relate back under Rule 15(c)." (quoting *Mayle*, 545 U.S. at 664)). Thus, the claim of ineffective assistance of counsel for failure to file an appeal in Qashou's untimely amended motion does not relate back to his original § 2255 motion.[14]

Though it is within the realm of possibility that Qashou intended his original ineffective assistance of counsel claim to include a failure to appeal—because effective counsel would have appealed his sentence and he would not have gone to prison—this argument is beyond the bounds of leniency granted a pro se litigant because it is illogical.

---

[14] The Eleventh Circuit stated that when an original claim is "so vague and indefinite to make it impossible to determine with reasonable certainty whether an 'amended' claim does relate back or not[,]" it is "no abuse of discretion" in such instances to conclude "the amendment is time-barred." *Chin v. United States*, 853 F. App'x 640, 644 (11th Cir. 2021) (per curiam). The Court believes that it can determine (and has determined), with reasonable certainty, that the amended claim does not relate back to the original claim. Nonetheless, the Court highlights that in such instances as this where the original claim is so vague, it is not an abuse of discretion to find that an untimely amendment does not relate back.

While a court must construe a pro se litigants' filings liberally, this requirement for lenient interpretation is not boundless. "[E]ven in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Here, an appeal would not have prevented prison time. The district court rejected a plea agreement that would have given Qashou time served (no prison time) because it was such a significant departure from the guidelines. Crim. Doc. 57 at 44. Consequently, the second plea agreement provided that the Government agreed to recommend a sentence at the bottom of the guideline range. Crim. Doc. 59 at 2. Both Qashou and the Court accepted this plea agreement. Moreover, in his original § 2255 motion, Qashou acknowledged that the operative plea agreement included prison time. Doc. 1 at 4 ("[T]he Plea of RECORD WITH prison stay included is illegal fraud and a void arrangement per terms of 'Negotiable Instrument Law' (NIL)."). Thus, based on the plea agreement and case history, it was logical that the sentencing hearing would impose a prison sentence. To contort Qashou's original § 2255 motion to contain a claim of ineffective assistance of counsel for failure to appeal based on his assertion that effective assistance of counsel would have prevented prison time is therefore illogical. Because the argument is illogical, such a characterization of Qashou's original ineffective assistance of counsel claim would constitute a rewrite of his original § 2255 motion, and the Court does not have license to do that.

In summary, the Court may sua sponte address the timeliness of Qashou's amended motion because the Government's silence amounted to forfeiture of its statute of limitations defense, Qashou's new claim of ineffective assistance of counsel for failure to file an appeal is untimely under § 2255's one-year limitation rule, the claim does not "relate back" under Rule 15(c), and there is no justifiable reason to find that the original § 2255 motion included a claim of ineffective assistance of counsel for failure to file an appeal.

3. <u>Qashou's claim for ineffective assistance of counsel for failure to file an appeal raised in his second amended motion fails because he cannot satisfy the second prong of *Strickland*.</u>

In the interest of thoroughness, the undersigned finds it necessary to address the merits of the appeal-based ineffective assistance of counsel claim despite its untimeliness. Qashou asserts that his counsel, Irwin, was ineffective because she did not consult with Qashou about the advantages and disadvantages of an appeal and this lack of consultation prejudiced him because he would have timely appealed. Doc. 19. He attached a Declaration to his brief as evidence. Doc. 19-1. The Government responded that because Qashou did not give Irwin express instructions to appeal and Irwin properly consulted him on the merits of an appeal, Irwin was not deficient in her performance. Doc. 22. Qashou's reply did not provide relevant arguments about Irwin's alleged ineffective assistance for failure to file an appeal. Doc. 26.

The *Strickland* test, detailed above, "applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The Supreme Court elaborated that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is

professionally unreasonable." *Id.* (citations omitted). But "[i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," a court must first ask "a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. The Supreme Court defined "consult" to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* "If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. If a defendant can show either that his counsel disregarded specific instructions to file a notice of appeal, or that his counsel did not consult him when they had a constitutionally imposed duty to do so, then the defendant has satisfies the first prong of the *Strickland* test.

To satisfy the second prong, the defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. "[P]rejudice is presumed because rather than being denied the opportunity for a fair proceeding, the defendant is denied the opportunity for a proceeding at all." *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 483). "[T]he question whether a given

defendant has made the requisite showing will turn on the facts of a particular case." *Flores-Ortega*, 528 U.S. at 485.

Upon review of the briefings and evidence, the Court finds that Qashou did not give Irwin specific instructions to file or not file an appeal. In his brief, Qashou focused on whether Irwin consulted with him, and was aware that a consultation determination is necessary "[w]hen a defendant neither expressly directs counsel to file an appeal nor expressly directs counsel not to do so[.]" Doc. 19 at 1. While he claims that he "expressed as clearly as he could given his diagnoses that he desired to appeal[,]" he acknowledged that his expression may not be "taken as a direct instruction to appeal[.]" *Id.* at 3. Importantly, his Declaration[15] does not state that he instructed Irwin to file an appeal; instead, according to Qashou's sworn statements, he asked her about appealing under ineffective assistance of counsel and prosecutorial misconduct, and Irwin never discussed the advantages and disadvantages of filing an appeal with him. Doc. 19-1 ¶¶ 4, 6. The Government argued that "Qashou never alleges that he gave express instruction to appeal, and thus Irwin's failure to file that frivolous appeal was not deficient." Doc. 22 at 4. In her Affidavit, Irwin makes no mention of whether Qashou directed her to file an appeal. Based on the briefings and evidence,[16] the Court finds that Qashou did not give Irwin specific instructions to file an appeal.

_____

[15] The Declaration has the force of an affidavit because it complies with 28 U.S.C. § 1746; specifically, it is dated, signed, and Qashou declared under penalty of perjury that the statements were true and correct. *See Roy v. Ivy*, 53 F.4th 1338, 1347–48 (11th Cir. 2022).

[16] The email Qashou sent to Irwin about an appeal and that Qashou submitted to the Court much later will be addressed below; the Court has reservations about its veracity. *See* Doc. 40-1. Nonetheless, even if the email were considered in this part of the analysis, it does not contain a specific instruction to appeal and therefore does not change the Court's finding.

Thus, under *Strickland*, the first question is whether Irwin consulted—discussed the advantages and disadvantages of an appeal and made reasonable efforts to discover Qashou's wishes—with Qashou. The Eleventh Circuit has explained that "[s]imply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense." *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007). And a "sentencing judge notif[ying] [a defendant] that he had a right to appeal does not absolve counsel from the duty to consult with his client about the substance of the right to appeal." *Id.* at 1208 n.8. An attorney must actually consult with a petitioner "regarding the propriety of an appeal, rather than simply expressing his disagreement and making [p]etitioner's decision for him." *Gomez-Diaz*, 433 F.3d at 792; *see also Palacios v. United States*, 453 F. App'x 887, 888–89 (11th Cir. 2011); *Wilson v. United States*, 395 F. App'x 610, 612 (11th Cir. 2010) ("And from [petitioner's] statements, it is unclear whether his lawyer engaged in proper consultation in an effort to ascertain [petitioner's] informed decision or whether his lawyer simply expressed his disagreement with [petitioner's] desires about an appeal and made his decision for him.").

The evidence before the Court pertinent to this first question is as follows: (1) at the sentencing hearing Ganter affirmed he had discussed Qashou's appeal rights with him, to the extent that he possessed them, and would continue to advise him (Crim. Doc. 83 at 45); (2) Qashou stated in his Declaration that Irwin never discussed with him the advantages and disadvantages of filing an appeal, but rather, sometime after his sentencing on an audio-only phone call with Irwin, she told him he had no grounds for appeal and should instead focus on clemency (Doc. 19-1 ¶¶ 3, 5, 6); (3) Irwin stated in her Affidavit that

Qashou's assertion that she did not advise him about the advantages and disadvantages was "incorrect" (Doc. 21 ¶¶ 1, 9); (4) Irwin stated in her Affidavit that she had a phone call with Qashou on September 22, 2020, but she does not remember the contents of the phone call (*Id.* ¶¶ 6–8); (5) Irwin stated in her Affidavit that it was "incorrect" that she dismissed his ineffective assistance of counsel claim out of hand (*Id.* ¶ 5).

This evidence is insufficient to indicate whether a "consultation" took place as the Supreme Court defined the term. There are effectively two affidavits on the record, both asserting a contradictory stance to the other. Qashou claims Irwin did not discuss the advantages and disadvantages of an appeal, and Irwin claims this assertion is incorrect. But Irwin provided no elaboration on why that is incorrect, and she admits she does not remember the contents of the phone call with Qashou. If, as Qashou implies, Irwin simply asserted the view that an appeal would be unsuccessful, then that would not be a consultation because there was no discussion of the advantages and disadvantages of an appeal. *See Thompson*, 504 F.3d at 1207. Moreover, Ganter's assertion at sentencing that he discussed Qashou's appeal rights also does not demonstrate that a consultation took place because it is possible that Ganter did not discuss the advantages and disadvantages of taking an appeal. Thus, because of the uncertain nature of this first question, the Court assumes arguendo that Irwin did not adequately consult with Qashou. *See Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008) ("[W]e can assume *arguendo* in this case that counsel did not adequately consult with [petitioner] as to this matter, because it may be that counsel did not fully discuss the advantages and disadvantages of taking an appeal.").

Accordingly, the pertinent question now becomes whether Irwin had a constitutionally imposed duty to consult; specifically, whether a rational defendant would want to appeal or whether Qashou reasonably demonstrated to Irwin that he was interested in appealing. When answering this question, "courts must take into account all the information counsel knew or should have known." *Flores-Ortega*, 528 U.S. at 480 (citation omitted). A highly relevant factor as to whether counsel had a constitutionally imposed duty to consult is "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.*

To start, the conviction followed a plea agreement, which indicates that Qashou sought an end to judicial proceedings. *See Otero v. United States*, 499 F.3d 1267, 1270–71 (11th Cir. 2007). At the sentencing hearing on June 30, 2020, the Court rejected Qashou's first plea agreement and, upon his withdrawal of his guilty plea, set his trial for November 2, 2020. Crim. Doc. 57 at 44–46. Less than a month later, on July 24, 2020, Qashou filed a Notice of Intent to Change Plea. Crim. Doc. 54. Such a fast change in plea indicates that Qashou did not wish to wait the remaining three and a half months until his trial, and instead sought an end to the judicial proceedings.

Further, there is no reason to think that a rational defendant in Qashou's position would want to appeal. Factors a court should look at for this determination are "whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal." *Otero*, 499 F.3d at 1271. "Even in cases when the defendant pleads guilty, the court must consider such factors as whether

the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Flores-Ortega*, 528 U.S. at 480. Qashou pleaded guilty and the Court found above that the plea was valid. *See Devine*, 520 F.3d at 1288 ("[Petitioner] had pled guilty, and there was no suggestion that the plea was invalid."). There are also no nonfrivolous grounds for appeal. Qashou's plea agreement included an appeal waiver for only two circumstances: ineffective assistance of counsel or prosecutorial misconduct. The Court found above that Qashou's ineffective assistance of counsel claim failed because there was no evidence (provided by Qashou or on the record) that his counsel's performance was deficient and there is no argument before the Court (or on the Court's review of the record) for prosecutorial misconduct. *See Devine*, 520 F.3d at 1288 ("[Petitioner] would have had a viable appeal of his sentence only if the judge had imposed an illegal sentence. The record in this case reveals that the sentence here, which was at the bottom of the guidelines, was not an illegal sentence."); *Levy v. United States*, 665 F. App'x 820, 825 (11th Cir. 2016) ("[Petitioner] signed a plea agreement containing an appeal waiver, which allowed [two appealable issues]. Because neither of these things happened, a rational defendant in [petitioner's] shoes would not have sought to appeal."); *Otero*, 499 F.3d at 1271 ("Therefore, on account of the plea agreement's broad appeal waiver, any appeal taken by [petitioner] would have been frivolous and would have been an appeal that no rational defendant would have taken."). Qashou also received the sentence he bargained for: a sentence at the bottom of the guideline range. *See* Crim. Doc. 59 at 2. Thus, no rational defendant in Qashou's position would have wanted to appeal.

Whether Qashou reasonably demonstrated to Irwin that he was interested in appealing is more difficult to ascertain on this record. Qashou's second amended motion and Declaration provided that Qashou believes he reasonably demonstrated his interest in appealing by asking Irwin about appealing under ineffective assistance of counsel and prosecutorial misconduct (his two non-waived appellate issues) and through "his fervent, if frantic, efforts, visible on the instant docket and the underlying criminal docket." Doc. 19 at 1, 3; *see also* Doc. 19-1 ¶ 4. He also argued that he expressed his interest in appeal as clearly as he could given his comprehension speed and autism diagnosis. Doc. 19 at 3. But even accounting for Qashou's comprehension speed and autism diagnosis, this conduct does not amount to a reasonable demonstration of an interest in appealing. This is not a situation where Qashou, immediately unhappy with his sentence, turned to his lawyer and asked about an appeal. *See Thompson*, 504 F.3d at 1208 (holding that counsel had a duty to consult because petitioner was "unhappy" with his sentence and asked about the right to appeal at sentencing, thereby demonstrating an interest in an appeal); *Palacios*, 453 F. App'x at 889 (holding that petitioner's "conduct reasonably demonstrated an interest in appealing" because "after the [c]ourt announced [petitioner's] sentence," petitioner asked his counsel "what's next? What can we do now?"). For one, Qashou received his agreed upon sentence at the bottom of the guideline range. Moreover, it is undisputed that the first alleged discussion of an appeal between Irwin and Qashou occurred after his sentencing, likely on the phone call on September 22, 2020, five days after the sentencing hearing. Doc. 21 ¶ 6; Doc. 19-1 ¶ 3. Under such circumstances, asking about the only two viable appeal issues does not indicate, by itself, a *desire* to appeal a sentence.

Further, despite the discussion of appeal issues on the phone call (according to Qashou), there is no indication that Qashou showed any other interest in appealing after Irwin told him he had no grounds for appeal and to focus on clemency instead. It is not clear error to find that petitioner did not demonstrate an interest in appealing if, after a discussion about appeal, the petitioner does not indicate an interest in appealing. In *Devine*, petitioner and his attorney discussed an appeal immediately after sentencing. 520 F.3d at 1289. At that time the attorney informed petitioner that under the appeal waiver his only appeal issue was an illegal sentence, but that petitioner had received a legal sentence. *Id.* The Eleventh Circuit explained that "[t]he record is clear that [petitioner] understood his attorney's opinion that any appeal would be futile. Nevertheless, [petitioner] did not at that time say anything to suggest that he was interested in appealing anyway." *Id.* The Eleventh Circuit thereby held that the district court was not clearly erroneous for finding that petitioner "did not reasonably demonstrate to counsel that he was interested in appealing." *Id.* Similarly, in *Levy*, petitioner "responded to counsel's advice that there were no issues to appeal by saying 'okay' and shrugging his shoulders, and that [petitioner] never led counsel to believe [he] wanted to appeal." 665 F. App'x at 825. Again, the Eleventh Circuit held that the district court did not clearly err in finding that petitioner did not demonstrate an interest in appeal. *Id.* As in both *Devine* and *Levy*, there was (crediting Qashou's version) a telephone discussion between Qashou and Irwin about appealable issues, Irwin counseled against it, and based on the briefing and sworn statements there is no indication that Qashou was nonetheless interested in an appeal.

Additionally, Qashou's "frantic" filings do not show an interest because the question is whether the defendant reasonably demonstrated to counsel an interest in appealing. Filings, whether frantic or nor, that occur after the appeal period do not demonstrate to counsel an interest in appealing. The Court also notes, again, that none of Qashou's filings until his motion to amend on June 2, 2022, expressed a desire to appeal his sentence.

Based on the foregoing, the Court could conclude that Qashou did not reasonably express an interest in appealing to Irwin. However, the briefings and sworn statements are not the complete record concerning Qashou's interest in appealing. On March 29, 2023, the Court received a Motion to File an Evidentiary Submission containing an email from Qashou to Irwin as evidence for his ineffective assistance of counsel for failure to file an appeal claim. Doc. 40; *see also* Doc. 48 (Court Order granting the submission to the extent it supplements the § 2255 motion). This attached email was sent to Sandi_Irwin@fd.org on September 22, 2020 at 10:29 a.m. Doc. 40-1. Qashou claims the email was sent "possibly[] prior to the phone call with [] Irwin on that day[.]" Doc. 40. The header of the email is: "Important and Urgent Information – Interest in Appealing." Doc. 40-1. The relevant portion of the email reads:

> Please assist me, if it is at all possible to appeal, based on this information, or advise me regarding whether or not I need to be concerned about anything or take anything into consideration, if I were to file an appeal. If I am able to appeal, based on this information, I would like to do that as soon as possible.

*Id.* The Court questions the veracity of this email. Qashou does not mention this email in his amended motion, Declaration, or reply. He submitted it nine months after he filed his

amended motion, and there is no declaration or affidavit attesting to its authenticity. It strains belief that Qashou would have omitted this email, which demonstrates his interest in appealing, from his amended motion. Nonetheless, if this email is valid, then it shows that Qashou clearly demonstrated to Irwin an interest in appealing.

Due to these murky circumstances, the Court assumes arguendo that Irwin had a constitutional duty to consult. *See Flores-Ortega*, 528 U.S. at 487 ("Assuming, *arguendo,* that there was a duty to consult in this case[.]"). Accordingly, the Court turns to the second prong of the *Strickland* test: whether Irwin's (assumed arguendo) deficient performance prejudiced Qashou because, if not for her (assumed) failure to consult, he would have timely appealed. The Court finds that Qashou would not have appealed.

The Supreme Court provided that the "highly relevant" factors for this analysis are evidence of nonfrivolous grounds for appeal or "that the defendant in question promptly expressed a desire to appeal[.]" *Id.* at 485. The Supreme Court also explained that to "prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal." *Id.* at 486. However, "such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.*

The Court has established that there were no nonfrivolous grounds for appeal. The Court is also unpersuaded that Qashou made a prompt expression of a desire to appeal. Unlike in *Thompson* and *Palacios*, where the petitioners were dissatisfied with their sentences and asked about the right to appeal *at sentencing*, Qashou waited five days after sentencing to raise questions about appeal. *See* 504 F.3d at 1208; 453 F. App'x at 889.

Moreover, there is no evidence on the record (outside Qashou's allegations in his brief) that if he had received a consultation with Irwin he would have instructed her to appeal. Though he claims in his brief that the "Docket Report (other filings seeking relief)" support his assertion that he would have appealed, as detailed extensively above, none of his other filings in his criminal or civil case demonstrate that he was upset by his sentence—as opposed to his plea agreement and general prison time—and wanted to appeal. While Qashou does have a presumption of prejudice, this presumption is not absolute. *See Flores-Ortega*, 528 U.S. at 484 ("[A] *per se* prejudice rule ignores the critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything[.]"). Based on the foregoing, the Court finds that there is no reasonable probability that Qashou would have appealed even if Irwin had properly consulted with him.

Thus, Qashou's ineffective assistance of counsel claim for failure to file an appeal does not satisfy the *Strickland* test, as elaborated in *Flores-Ortega*, because he did not demonstrate that he would have filed an appeal upon receipt of a proper consultation. Consequently, his claim fails on the merits.

## III. CONCLUSION

The undersigned finds that Qashou's arguments to vacate his sentence are either barred or meritless. Accordingly, it is the RECOMMENDATION of the Magistrate Judge

that Qashou's § 2255 motion be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

Further, it is ORDERED that by **February 18, 2025**, the parties may file objections to this Recommendation.[17] The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *See* 11th Cir. R. 3-1.

DONE this 3rd day of February, 2025.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE

---

[17] *See supra* note 12.